## No. 9072.

### NUMA MOLLÈRE vs. JOHN P. HARP.

Notes executed by a young man in favor of his uncle, under the pressure of threats from the latter of taking the life of the former in case of his refusal to acknowledge a pretended indebtedness to his uncle, are invalid, and payment of the same will not be enforced by the courts.

The reverential fear of a relative, coupled with threats, is sufficient to invalidate a contract.

APPEAL from the Twenty-second District Court, Parish of Ascension. *Cheevers*, J.

*Edw. N. Pugh* for Plaintiff and Appellee.

*R. N. Sims* for Defendant and Appellant.

The opinion of the Court was delivered by

Poché, J.    Defendant resists the payment of fifteen promissory notes of one hundred dollars each, executed by him in favor of plaintiff, on the grounds that said notes were executed without consideration and that they were obtained from him by means of threats of great bodily harm by plaintiff.

His defence was rejected and he has appealed.

The record shows that plaintiff is the uncle, and has been the protector, of the defendant, whom he started in business in the year 1875 as a merchant, when the latter was only nineteen years of age.

The assistance which the uncle gave to the nephew consisted of a loan of a small sum of money and of his endorsement by his credit among his merchants in New Orleans.

The defendant prospered in business, refunded to his uncle the money which he had borrowed of him, and in the course of three years he had become the latter's creditor for a store account.    On a call for a settlement of his account, the uncle became very violent, and claimed to be a partner in defendant's business; and in the latter's store he called for a settlement of the pretended partnership, threatening that in default of a satisfactory settlement he would take the life of the defendant.

Following up his demand for a settlement of the partnership, he sent a few days later two of his friends to the defendant's store for the purpose of obtaining such settlement.    The defendant then signed a written acknowledgment of a partnership between his uncle and himself in his store.    Later on, he executed the notes now in suit, in settlement of his uncle's interest in the business.    The notes were made on the 8th of February, 1878, payable on demand to plaintiff, and this suit was instituted on the 16th of May following.

The evidence proves conclusively that plaintiff had no share or interest in defendant's store or business, and that he had fully and unequivocally recognized that fact and had urged no contrary pretension during the three years that defendant had conducted the business in which he had assisted him at its inception.

We are further convinced from the evidence that the written acknowledgment of a partnership and the subsequent execution of the notes, were obtained from the defendant by the repeated and violent threats of his uncle.    The acts of the latter placed the defendant in the terrible dilemma of receiving great injury from the well known vio-

lence of plaintiff, or of shedding the blood of his own uncle and former protector. In his harassing embarrassment, he took the advice of friends, who persuaded him that by means of the proposed settlement he would escape the harm which they all foresaw in the uncle's "savage disposition."

These conclusions are crystalized into a demonstration by the circumstance that plaintiff made no serious efforts to meet and counteract the evidence introduced by the defendant in support of his grounds of resistance.

The record shows that plaintiff and the two friends who had obtained the written agknowledgment of the defendant touching the pretended partnership, were all living in the very parish where the case was tried at the time of trial, and that neither of them was placed on the witness stand.

In face of the damaging testimony introduced by the defendant, and which had at least the effect of creating grave doubts as to the validity of the contract and of shifting the burden of evidence on plaintiff, it was incumbent upon him to meet the same by his own testimony and by that of the persons who had been efficient factors in parts of the *res gestæ*. His failure to produce that indispensable evidence leaves his case without support, and strips his claim of all force either in law or in equity.

We, therefore, conclude that there was no legal cause for the contract sought to be enforced, and that it is entirely invalidated by the threats made by plaintiff. C. C. 1854, 1859; 12 Rob. 378.

The judgment appealed from is therefore erroneous, and it is in consequence annulled, avoided and reversed; and plaintiff's claim is therefore rejected and his action is dismissed at his costs in both courts.

Rehearing refused.